## FARMERS & MERCHANTS NAT. BANK v. ARRINGTON et ux.

### No. 1591.

Court of Civil Appeals of Texas. Eastland.

Oct. 30, 1936.

Scarborough & Ely, of Abilene, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellees.

FUNDERBURK, Justice.

This suit as at first filed by Farmers & Merchants National Bank, on July 13, 1933, was against Mrs. Lucille Webb and Charlie Arrington and wife, Lady Arrington. The cause of action asserted against Mrs. Webb was one for debt evidenced by certain described notes and for foreclosure of a deed of trust lien on property described as lots 3 and 4, block C, Anderson's addition to the city of Abilene. This lien will be referred to as the Webb deed of trust lien. The only allegations having reference to Arrington and wife were that they "are claiming and asserting an interest in a portion of the above described property but said interest and claim, if any they have, is inferior and subject to plaintiff's first and superior

lien on said land. Wherefore, said defendants are made parties to this suit to the end that the rights, if any they have, may be adjudicated and foreclosed in this action." The Arringtons answered this pleading only by a general demurrer and general denial.

On September 10, 1934, plaintiff filed its first amended original petition, reasserting the same cause of action against Mrs. Webb and repeating the former allegations relating to the Arringtons, and, in addition thereto, describing two vendor's lien notes executed by the Arringtons' for the purchase price of a part of the land and a deed of trust securing same, and, as an alternative, praying judgment for the amount due on said vendor's lien notes with foreclosure of said vendor's lien and deed of trust lien given by the Arringtons to secure said indebtedness. Afterwards, the plaintiff settled with Mrs. Webb, who executed to it a quitclaim deed to all the property described in the deed of trust given by herself and deceased husband, C. B. Webb, and which the suit as originally filed sought to foreclose. The suit was thereupon dismissed as to Mrs. Webb. Thereafter, on May 9, 1935, plaintiff filed its second amended original petition setting up the Webb deed of trust as before, reciting the dismissal of the suit as to Mrs. Webb, and further setting up the Arrington notes and liens and asking for a foreclosure of said liens.

To the last pleading the Arringtons answered by general demurrer and general denial and specially pleaded (1) a release by the Central State Bank of Abilene and its predecessor, First State Bank of Abilene, of the Arrington lot from the Webb deed of trust lien; (2) a conveyance from the Webbs of said lot to the Arringtons; (3) payment of the vendor's lien notes given for the purchase price of said lot; (4) four years' limitation against any cause of action upon said notes and foreclosure of liens securing same; (5) the coverture of Mrs. Arrington.

Upon the trial, without a jury, judgment was rendered for the defendants. The trial judge upon request of the plaintiff filed conclusions of fact and law. From the conclusions of fact it appears (1) that on March 5, 1924, C. B. Webb and wife sold to Charlie Arrington and wife lot No. 6, in block No. 4, of C. B. Webb's subdivision of lots 3 and 4, block C, Anderson's addition to Abilene. (2) By mutual agreement of the Webbs, the Arringtons, and the First State Bank, the holder of the notes secured by the Webb deed of trust lien, the Arringtons, as a part of the consideration for the purchase of said lot, executed two notes attached as exhibits to the pleadings, payable to said bank, and secured by vendor's lien and also deed of trust lien executed by Arrington and wife to said bank, and covering only the Arrington lot. (3) In consideration thereof the First State Bank contemporaneously with the execution of the Arrington notes and deed of trust released the Arrington lot from the liens theretofore executed by Webb and wife to the bank, such release being placed of record. (4) Arrington and wife on the date of the purchase (March 5, 1924) went into actual possession of the Arrington lot and have been living thereon since that time, claiming and using same as their home. (5) Shortly thereafter the First State Bank became insolvent and the Central State Bank of Abilene became its successor, assumed all of its liabilities, and acquired all of its assets. (6) About April 5, 1927, the Central State Bank executed a new release, again releasing the Arrington lot from all liens theretofore held by said bank, and the First State Bank; such release being immediately placed of record, and thereafter said bank had no lien against the Arrington lot, except the vendor's lien retained in the deed from Webb and wife to Arrington and wife, and the deed of trust lien executed by Arrington and wife to the bank securing the vendor's lien notes. (7) That thereafter, about April 19, 1929, C. B. Webb and wife executed a renewal deed of trust to the Central State Bank to secure their indebtedness at that time amounting to $10,400, the renewal deed of trust describing the property as being lots 3 and 4, block C, Anderson's addition, without specifically omitting therefrom the Arrington lot which had theretofore been released from the Webb liens by the bank. (8) Thereafter, about March 23, 1931, the Central State Bank transferred and conveyed all its assets to the Farmers & Merchants National Bank of Abilene, Tex., the plaintiff, and executed a written assignment on the 31st day of December, 1932, such assignment being made long after the maturity of the last installment due on the notes executed by Arrington and wife to the bank. (9) This suit was filed on July 13, 1933, seeking recovery

against Lucille Webb on the $10,400 note, and asking for a foreclosure of the Webb deed of trust lien as against all defendants, making no mention of the Arrington notes and liens; that at that time all of the Arrington notes were more than four years past due except the last two installments of $200 each. (10) That thereafter, on September 10, 1934, plaintiff filed its first amended original petition asking for judgment on the Webb note and lien and also setting up the Arrington notes and liens and asking for foreclosure of same. (11) That at the time of the filing of said first amended original petition the last installment of the Arrington notes was more than four years past due. (12) That thereafter the plaintiff settled with Mrs. Webb and she executed a quitclaim deed to plaintiff for the property described in the Webb deed of trust, and the suit was dismissed as to the defendant Lucille Webb.

The judge's conclusions of law were: "I conclude that the defendants Charlie Arrington and wife, Lady Arrington, are the owners in fee simple of the Arrington lot, and the plaintiff is not entitled to recover anything of and from Arrington and wife by virtue of any liens and notes and I further conclude that the plaintiff is the owner of all the property described in plaintiff's petition, except the Arrington lot."

■ We think, in the absence of more specific conclusions of law with particular reference to limitation and payment, the above are sufficient conclusions of fact and law to support the judgment rendered. Unless the conclusions of fact include an implied finding of the payment of the notes in question, there is no assignment of error challenging any of the conclusions of fact. The first assignment of error stated as a conclusion from the recitation of certain matters is, "* * * the court erred in entering judgment for appellees." The second assignment of error is that "* * * the court erred in entering judgment in favor of the appellees for the lot in question." The third assignment of error is that "* * * the court erred in entering judgment for the lot in favor of the appellees." Assignments of error Nos. 2 and 3 are, therefore, in substance but repetitions of No. 1. Each is stated as a conclusion from matters preceding, which are but the reasons why it is claimed that the court erred

in rendering judgment, and therefore not a part of the assignments of error. Panhandle & S. F. Ry. Co. v. Burt (Tex.Civ. App.) 71 S.W.(2d) 390, and the authorities there cited. Unless there was error in one or more of the conclusions of fact or of law, it was not only not error for the court to render judgment for the defendants, but it was its plain and mandatory duty to do so. The main purpose of the law requiring a trial judge to file conclusions of fact and law is to enable an appealing party to specifically assign error to such conclusions of fact or law as are claimed to be erroneous. Courts of Civil Appeals, rule 27, 142 S.W. XII.

■ Upon the assumption that the court impliedly found that the notes had been paid, assignment of error No. 4 presents the question of whether there was any evidence to support such finding, and assignment of error No. 5 presents the question of whether such finding was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. A very interesting question is presented as to whether the conclusions of fact can properly be held to imply a finding of payment. If, however, we were to determine that question and conclude that there was no such implied finding, that would not determine that the judgment was erroneous; because it would remain sufficiently supported by the unchallenged findings of facts to show that the cause of action was barred by the four years' statute of limitation (Vernon's Ann.Civ.St. art. 5527). We deem it unnecessary, therefore, to pass upon the question in view of our conclusion on the question of limitation.

■ Assignment of error No. 6 challenges the conclusion of law that the appellees were the owners in fee simple of the Arrington lot. It is urged as a reason to support that contention that the evidence showed appellant held the paramount vendor's title and lien which was unsatisfied and that appellees' right in the property had been challenged by suit before the notes were barred. According to the trial judge's conclusions of fact, appellant did not hold the paramount vendor's title or lien upon the Arrington lot. At least the conclusions failed to show that such was the fact. The mere assignment of a purchase-money note does not carry with it the vendor's superior title

to the property. 43 Tex.Jur. p. 285, § 170, and authorities cited under note 4.

Besides, according to appellant's pleading, the title to the Arrington lot was not really in issue, except upon the condition that the deed from the Webbs to the Arringtons was held by the court to be void. If such deed was held to be valid, then the only claim asserted against the Arringtons was for a foreclosure of the vendor's lien and deed of trust lien, which constituted an election by pursuing the inconsistent remedy of having the lien foreclosed and property sold to satisfy the debt to confirm title in the grantee subject to such right of foreclosure. See collation of authorities in Breeding v. Farm & Home Sav. & Loan Ass'n (Tex.Civ.App.) 90 S.W.(2d) 272. It is true that, under an exception to the rule, plaintiff, after the defendants had pleaded limitation, could have amended and sought recovery of the lot if in fact it held the legal title— a matter the findings do not make clear— but no such amendment was filed.

We are further of the opinion that, as to the alternative cause of action to recover upon the Arrington notes and to foreclose the vendor's lien and deed of trust lien securing said notes, the suit as it was first filed did not toll the running of limitation. Originally the suit, in so far as it purported to affect the Arringtons, was no more than an invitation to them to set up any claim they had to any part of the land upon which foreclosure of the Webb deed of trust lien was sought, which would bar such right as to any particular part or interest. They were not required to set up and litigate just any claim of title or interest they may have had, but only such as they claimed through the Webbs. Faubion v. Rogers, 66 Tex. 472, 1 S.W. 166; Walraven v. Farmers' & Mechanics' Nat. Bank (Tex. Civ.App.) 53 S.W. 1028; Wolf v. Harris, 20 Tex.Civ.App. 99, 48 S.W. 529; Hinzie v. Kempner, 82 Tex. 617, 18 S.W. 659.

Every right asserted in the suit originally against the Arringtons was conclusively disproved by the release of the Arrington lot from the Webb deed of trust lien given by plaintiff's indorsers of said Webb deed of trust lien and the notes secured thereby. It was not necessary for the Arringtons to tender issues of their title to the lot or their liability upon the notes and liens given by them. If the lot was not subject to a foreclosure of the Webb deed of trust lien, it was immaterial to any right of the plaintiff whether the Arringtons had title to the lot or the nature of any title they had, or whether such title was subject to liens given by them, or whether such liens had been discharged. The cause of action upon which the judgment, from which the appeal is prosecuted, denied recovery, was not alleged in the suit as originally filed, but was an entirely different cause of action asserted for the first time in plaintiff's first amended original petition filed more than four years after same accrued. There can be no doubt, we think, that it was barred by limitation, unless Vernon's Ann.Civ.St., art. 5539b, operated under the circumstances to save it from such consequences. The statute mentioned within its scope of operation undoubtedly wrought important changes in the previously existing laws of limitation. Under its provision a suit asserting a cause of action not barred may toll the running of limitation against another and entirely different cause of action. There is this exception, however; the suit upon the original cause of action will not toll the running of limitation against another and different cause of action if the latter grows out of a wholly new, distinct, or different transaction and occurrence. In other words, when a suit is filed asserting a cause of action not barred by limitation, as many other and different causes of action not barred at the time of filing suit may, by amendments, be asserted from time to time during the pendency of the single suit as wholly or in part grow out of the same transaction or occurrence. "Occurrence," as defined by Webster's International Dictionary, is "a coming or happening"; "any incident or event, specially one that happens without being designed or expected." The word "transaction" has many meanings. One is " * * * an entire occurrence out of which a legal right springs, or upon which a legal obligation is predicated." 63 C.J. p. 771, § 3. Another is, " * * * whatever may be done by one person which affects another's rights, and out of which a cause of action may arise." Id. Explanatory of the above, it is stated by the same authority: "It must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the

legal relations of such persons between themselves are altered." Id. p. 772.

The question then is this: Does the cause of action upon the Arrington notes and for foreclosure of the vendor's lien and deed of trust lien grow out of a transaction and/or occurrence wholly new, distinct, or different from the transaction and/or occurrence out of which the cause of action originally asserted grew? We think it clearly apparent that they were entirely distinct one from the other, and within the exception provided by the statute. Callihan v. Ft. Worth Well Mach. & Supply Co. (Tex.Civ.App.) 88 S.W.(2d) 1057; Ramirez v. First State Bank & Trust Co. (Tex.Civ.App.) 92 S.W. (2d) 523; Goodwin v. Hidalgo County Water, etc., Dist. (Tex.Civ.App.) 58 S.W. (2d) 1092; Schneider v. McClory (Tex. Civ.App.) 83 S.W.(2d) 352. Writ of error was granted in the Ramirez Case on the question of the construction of this statute, but we are not inclined to attach much importance to that fact since it seems to us that that case may easily be distinguished from the present one.

Being of the opinion that no error is shown and that the judgment of the court below should be affirmed, it is accordingly so ordered.