AMIS PROPANE, Inc., Appellant,

v.

Theron J. GRAVES, dba Graves Butane Company, Appellee.

No. 5227.

Court of Civil Appeals of Texas.

El Paso.

July 24, 1957.

Rehearing Denied Aug. 30, 1957.

Wm. B. Jennings and Richard C. White, El Paso, for appellant.

Hardie, Grambling, Sims & Feuille, El Paso, for appellee.

HAMILTON, Chief Justice.

This is an appeal from the 65th Judicial District Court of El Paso County, Texas, in a suit brought by Theron J. Graves, doing business as Graves Butane Company, against Amis Propane, Inc., wherein judgment was entered for appellee (plaintiff below) against Amis Propane, Inc., defendant below, and appellant herein, on a sworn account in the sum of $5,833.40, and denying appellant recovery on his cross-action. In appellee's original petition, filed August 17, 1955, he alleged that on or about February 16, 1954, he shipped to appellant, Amis Propane, Inc., six gas tanks at the special instance and request of appellant. The tanks were described as four 1500 gallon tanks, and two Trinity Steel Company tanks, giving the serial number of each tank. The reasonable market value of said tanks was alleged to be $450 each for the 1500 gallon tanks, and $1,791.70 each for the Trinity Steel Company tanks, or a total of $5,383.40. It was further alleged that appellant refused to return said tanks on demand, and refused to compensate for them, but converted them to its own use, to appellee's damage in the above amount. On April 2, 1956, appellee filed his amended petition, wherein he set up a contract of sale for seven tanks, adding one 1500 gallon tank, at a price of $450, to the list of tanks described in his original petition. Appellant, Amis Propane, Inc., answered by setting up the two-year statute of limitations in bar of appellee's cause of action based on sale of all of the tanks, asserting that it was a new cause of action. Appellant further answered, pleading payment, accord and satisfaction, and by bringing action for debt as a cross-action against appellee, for various goods, equipment, supplies, debts and accounts receivable, and property, located in Ysleta, Texas, sold by appellant to appellee.

It appears from the record that Theron Graves, appellee, was in the business of selling wholesale liquid gas products. Amis Propane, Inc. was in the business of selling said products at retail. It had a plant at Anthony, New Mexico, to which place the tanks in question were delivered to appellant by appellee. At about the time the tanks in question were delivered to appellant, appellant and appellee entered into some kind of business agreement, the nature of which is not clear from the record, but it appears that Amis Propane, Inc. was to set up a plant at Ysleta, Texas, for the sale of liquified gas products, and appellee Graves and a man by the name of Alverson were to handle the sale of the products. It appeared that Amis Propane, Inc. paid all the cost of installation of the plant at Ysleta, and certain operating expenses, such as ground rent, telephone bills, salary of Alverson, etc. This joint operation of Graves and Amis Propane, Inc. continued for about six months, at which time the arrangement was split up, because Graves wanted to concentrate more on sales in Old Mexico than was appellant's desire. Appellant contended, and its testimony shows, that Graves agreed to take over the plant at Ysleta, and accounts receivable in the amount of $2,831.64 in Old Mexico, in satisfaction of the debt which he owed Graves for the tanks installed at Anthony, New Mexico. Appellee denied such an agreement. There was no dispute as to the sale of the tanks to appellant and the amount for which they were sold, said seven tanks amounting to $5,833.40. The only dispute in the case involved the cross-action filed by appellant.

The court submitted the case to the jury on seven special issues. Four of them are pertinent to the points raised on this appeal, and these questions, and the answers given by the jury, are set out as follows:

"Question No. 1: In what sum of money, if any, do you find from a preponderance of the evidence, defendant, Amis Propane, Inc., is presently indebted to plaintiff Graves for the tanks

in question? Answer: Answer in dollars and cents, if any. We Answer: $5,833.40.

"Question No. 4: Do you find from a preponderance of the evidence that plaintiff and defendant, Amis Propane Company, Inc., agreed with each other on or about September 1st of 1954 that plaintiff's account in question would be settled and discharged by the defendant, Amis Propane Company, Inc., transferring to plaintiff those items set forth in defendant's Exhibit D–5? Answer: 'Yes' or 'No.' We Answer: No.

"Question No. 5: Do you find from a preponderance of the evidence that the account sued upon by plaintiff was in part or in whole settled and discharged by defendant, Amis Propane Company, Inc., by the transfer to plaintiff by said defendant of its Ysleta assets, certain accounts receivable and cost of benefits bestowed on the Ysleta project, if any, and acceptance thereof by plaintiff, if any, after August of 1954 and before the filing of this suit? Answer: 'Yes' or 'No'. We Answer: Yes.

"Question No. 6: What portion, if any, of plaintiff's said account, do you find from a preponderance of the evidence was settled and discharged by such transfer, if any? Answer: Answer in dollars and cents. We Answer: $4,798.99."

The appellant complained that the trial court committed error in failing to sustain his plea of two-year statute of limitations on appellee's amended plea, basing his cause of action on a sale rather than conversion, as first alleged, and also that the court erred in not sustaining appellant's plea of limitation as to the seventh tank sued for in appellee's amended petition more than two years after the alleged sale. Appellant further complains of the trial court's failure to enter judgment on the jury's verdict wherein the jury found, in answer to

Issues Nos. 5 and 6, that appellant was entitled to $4,798.99 credit on plaintiff's account, for transfer by appellant of certain accounts receivable, cost of benefits bestowed upon the Ysleta project, and acceptance thereof by appellee.

■ We overrule appellant's points directed at the trial court's ruling in not sustaining appellant's plea of limitation to the new cause of action set up in his amended plea. We base our holding on Article 5539b, Vernon's Ann.Tex.Civ.St., and the court's decisions construing said statute. We quote the applicable part of said statute, as follows:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence."

Assuming that appellee's First Amended Original Petition, filed more than two years after date of the transaction on which his lawsuit is based, alleges a new cause of action, such allegation is not subject to the plea of limitation, for the reason that the allegation of sale is based on the same transaction on which the allegation of conversion was based in the original petition. There is no contention on the part of anyone that there was but one transaction involved. Although appellee's original petition mentioned only six tanks involved in the transaction, we do not think that the inclusion of an additional tank in appellee's amended petition would result in the claim on said seventh tank being subject to the plea of limitation, because no new transaction or occurrence between appellant and

appellee was alleged, and the evidence in the trial did not reflect any different transaction as to said seventh tank. According to the record, they were all bought at one time, and it all grew out of the same transaction. In the case of Global Corp. v. Vincent, Tex., 295 S.W.2d 640, 642, it is said:

" * * * Unless the cause of action alleged in an amended pleading involves a different transaction from that in the original pleading, the latter having declared upon a cause of action not then barred, it is immaterial that the cause of action alleged in the amended pleading be different from the cause of action originally alleged. The test which Vernon's Ann.Civ.St., art. 5539b makes proper is whether or not the cause of action alleged in the amended pleading be 'wholly based upon and grows out of a new, distinct or different transaction and occurrence.' Farmers & Merchants Nat. Bank v. Arrington, Tex.Civ.App., 98 S.W.2d 378, 379; Universal Life & Accident Ins. Co. v. Johnson, Tex.Civ.App., 120 S.W.2d 314."

See also, Blalack v. Johnson, Tex.Civ.App., 293 S.W.2d 811.

In answer to Issue No. 1, the jury found that appellant was presently indebted to appellee for the tanks in question, in the sum of $5,833.40. That is the exact amount for which appellee sued in his sworn account.

In answer to Issues Nos. 5 and 6, the jury found that the account sued upon by appellee was settled and discharged in part, to the extent of $4,798.99, by the transfer by appellant, and acceptance by appellee, of the Ysleta assets, said accounts receivable, and cost of benefits bestowed upon the Ysleta project.

The trial court rendered judgment for appellee for $5,833.40, the full amount he sued for, and ignored the jury's answers to Issues 5 and 6, by giving no effect to them whatsoever. We are at a loss to understand how the court reached such a conclusion, unless it reasoned, as is contended by appellee, that since the jury found in answer to Special Issue No. 4 that there was not a full accord and satisfaction, there could be no recovery by appellant for a lesser amount for the transfer of the accounts receivable and other assets of the Ysleta project to appellee. We do not understand this to be the law. Although appellant testified that appellee agreed to accept the accounts in the Ysleta project in full satisfaction of the tank account, there was testimony that the accounts receivable and physical properties of the Ysleta project were to be applied against the tank account. Included in the list of assets of appellant, transferred to appellee, were a number of items which represented no more than paid bills of operating expenses of the Ysleta project. The total of all such items, including the accounts receivable, the equipment, and physical properties of the Ysleta project, was $8,411.06. Apparently the jury, in arriving at its answer to Issue No. 6, eliminated all items except the accounts receivable and the cost of physical equipment and improvements placed on the Ysleta project. Although the jury may not have believed the appellee accepted said assets and accounts in full satisfaction of his account against appellant, the evidence amply supports its finding that appellant was entitled to have applied against appellee's account the accounts receivable and the cost of the equipment and improvements placed on the Ysleta project which were accepted by appellee. No objection to the manner in which the issues were submitted appears of record.

Although appellee contends there is no conflict in the answers of the jury to Special Issues Nos. 1 and 6, he does point out an apparent conflict. Appellee says, in effect, that if the jury really believed that appellant had discharged his debt to appellee in the amount of $4,798.99, as was found by the jury in answer to

Special Issue No. 6, it would have answered Issue No. 1 in the amount of $1,034.41, instead of $5,833.40, the full amount sued upon, which the jury found was presently owing. He would have the court resolve this apparent conflict by arbitrarily giving effect to the jury finding in favor of one party, and giving no effect to the jury finding in favor of the other party. With this method of resolving the apparent conflict we do not agree. If the court, after considering the charge as a whole, cannot give reasonable effect to both findings, then the best practice would be to declare a mistrial and order a new trial.

We think, when this whole charge in this case is taken into consideration, there is a reasonable basis upon which the apparent conflict can be resolved. It must be remembered we have two law-suits here—one on the sworn account of appellee, and the other on the cross-action of appellant for the accounts receivable and assets transferred to appellee. We think that it is reasonable to conclude that the jury, in effect, found that Amis Propane, Inc. was indebted to Graves in the amount of $5,833.40 for the tanks in question, and that Graves was indebted to Amis Propane, Inc. in the amount of $4,798.99 for the transfer of accounts receivable and the Ysleta project assets. The jury was not instructed in connection with Issue No. 1 to take into consideration, in arriving at its answer to such issue, any amount, if any, as may be found to be owing appellant on his cross-action, and nothing could be more certain than that it did not do so. We think the cases of Driver v. Worth Construction Co., Tex.Civ.App., 264 S.W.2d 174, and Texas Employers Insurance Ass'n v. McDowell, Tex.Civ. App., 278 S.W.2d 444 (wr. ref.), which were cited by appellee, support our position in this matter.

Having found that the trial court was in error in not giving credit to the appellant in the amount of $4,798.99 as against the account of appellee, the judgment of the trial court is hereby reformed by deducting $4,798.99 from the amount of the judgment rendered in favor of appellee. Otherwise, the action of the trial court is affirmed.